## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**DAWN F. BRUNER,**

        **Plaintiff,**

**-v-**                           **CASE NO. 2:06-CV-383-FTM-29-DNF**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

        **Defendant.**
_____/

### OPINION AND ORDER[2]

    This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for disability, disability insurance benefits, and Supplemental Security Income (SSI)[3]. The Plaintiff timely pursued and exhausted his administrative remedies making this claim ripe for review

---

[1]     Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 31, 2006. (Doc .# 9).

[3]     Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. Patterson v. Bowen, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); McCruter v. Bowen, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

under section 216(I) and 223, respectively of the Social Security Act, as amended and

disabled under section 1614(a)(3)(A) of the Act.  The Commissioner has filed a

transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate

page number), and the parties have filed legal memoranda.  For the reasons set forth

below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
        AND STANDARD OF REVIEW**

        The plaintiff is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period

of not less than twelve months.  42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A).  The

Commissioner has established a five-step sequential evaluation process for determining

whether the plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §

416.920(a)(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

        The plaintiff filed applications for disability, disability insurance benefits and

Supplemental Security Income on June 25, 2002, alleging disability since March 21,

2002. (Tr. 63, 357).   The plaintiff's application was denied initially and upon

reconsideration (Tr. 40, 44, 362, 366).  The plaintiff was represented by counsel and

testified at the hearing held on September 8, 2005, along with an impartial vocational

2

expert.  (Tr. 369).   Administrative Law Judge (ALJ) Richard E. Ouellette denied

benefits in his decision dated January 26, 2006. (Tr. 22-32).  The plaintiff requested a

review of the hearing decision and on June 19, 2006, the Appeals Council denied the

request.  (Tr. 3).  The plaintiff has exhausted her administrative remedies, and timely filed

a complaint with this Court.   At Step 1 the ALJ found the plaintiff had not engaged in

substantial gainful activity since her alleged onset date of March 21, 2002.  (Tr. 23).   At

Step 2 the ALJ found the plaintiff suffered from right shoulder pain, right hip pain and

wrist pain, which were found to be severe within the meaning of the Regulations. (Tr.

31).   At Step 3 the ALJ found  these impairments did not meet or equal, either singly or

in combination with any other impairments, any of the impairments in Appendix I,

Listing of Impairments, 20 C.F.R. §§ Part 404, Subpart P, Regulations No. 4. (20

C.F.R. 404.1520(g).  (Tr. 31).  At Step 4 the ALJ determined the plaintiff had the residual

functional capacity to perform sedentary work[4] and unable to perform her past relevant

work. The ALJ found the plaintiff's allegations regarding her limitation not totally

credible.  (Tr. 31).  At step 5, the burden shifts to the Commissioner only after the

plaintiff has proven that she is unable to engage in past relevant work and to determine if

there is other work available that the plaintiff can perform.  20 C.F.R. §§ 494.1520(g),

416.920(g).

---

[4]    Sedentary work involves lifting no more than ten pounds at a time and
occasionally lifting or carrying small articles.  A sedentary job involves sitting,
although a certain amount of walking and standing are required.  20 C.F.R. §§
404.1567(a), 416.967(a).

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. <u>Crawford v. Commissioner of Social Security</u>, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. <u>Crawford</u>, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. <u>Crawford</u>, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. <u>Dyer</u>, 395 F.3d at 1210; <u>Shinn ex rel. Shinn v. Commissioner of Social Security</u>, 391 F.3d 1276, 1282 (11th Cir. 2004); <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.  REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A.     BACKGROUND FACTS:

The plaintiff was born on June 7, 1973 and was thirty-two years old at the time of the ALJ's decision. (Tr. 373). The plaintiff has a high school education and past work as a massage therapist, cashier, telemarketer and waitress. (373-74). The plaintiff alleged an onset date of March 21, 2002. It is noted, however, that the plaintiff showed wage earnings for 2002 in the amount of $7,695.00 and wage earnings in 2003 in the amount of $1,062.00. [Tr. 27]. The plaintiff's tax form confirms she worked as a massage therapist at the Center for Family Care, Inc.

4

The Plaintiff was injured in a motor vehicle accident on March 21, 2002.  The Plaintiff was the [unrestrained] driver of a car that hit a garbage truck.  After the accident the plaintiff complained of right knee pain, hip pain and chest wall pain.  The plaintiff was admitted to Lee Memorial Hospital on March 21, 2002 and released on March 24, 2002.  The plaintiff underwent a closed  fracture dislocation of the right acetabulum posteriorly.  Dr. Richard's notes show that the "[h]ip was reduced with no significant crepitance.  Range of motion was excellent following reduction.  Plain film of the pelvis was obtained, which showed concentric reduction."  The plaintiff also had a contusion with brief loss of consciousness and an open wound to her knee, leg and ankle. [Tr. 153].  On postoperative day one, the plaintiff's cervical collar was discontinued by neurology.  The plaintiff received a satisfactory physical therapy course and was given diet and activity instructions.  On the third day the plaintiff was deemed medically stable for discharge and advised to follow-up with Paul J. Richards, M.D.  [Tr. 153].

On March 28, 2002, the plaintiff was seen by Dr. Richards.  The plaintiff 's lacerations were found to be healing  "quite well".  The plaintiff expressed having some pain with passive range of motion of the hip.  The x-rays revealed the right hip was well-reduced with no bony abnormalities.  The plaintiff advised Dr. Richards of having some pain with forward flexion of her shoulder but views of the left shoulder showed no acute or chronic abnormalities. [Tr. 346].

On April 7, 2002, the plaintiff returned to Lee Memorial Hospital with hip pain. The notes of Peter J. Patton, DO, attending physician, reveal the plaintiff needed a refill for her Percocet prescription, as Dr. Richards was not available.  The plaintiff was given Demerol 100 mg. and Vistaril 25 mg. IM for pain management and monitored for 30 minutes.  The plaintiff was advised by the emergency department physician upon her release that they did not prescribe narcotic medications or refill narcotic medications for chronic pain. [Tr. 155-56].

Dr. John C. Kagan ordered an MRI of the cervical spine.  The results of the cervical MRI revealed a small dorsal disc bulge at C5-6 and minimal dorsal annular bulging at C4-5 without any herniation, stenosis or neural compression.  The remaining cervical levels were unremarkable and the cord was intrinsically normal.  There were no fractures identified. [Tr. 194-216].

On October 3, 2002, Dr. Kagan treated the plaintiff with Depo-Medrol and Macaine.  The plaintiff advised she was working in therapy which was helping her only slightly.  The plaintiff did report that  her knee swells after her physical therapy. The plaintiff also advised she was in moderate pain, was better when she  rested and felt she was only  minimally improving. [Tr. 194-216].

On November 8, 2002, the plaintiff was seen by Kenneth Berdick, M.D.  Dr. Berdick found the plaintiff was doing better without significant musculoskeletal pain. The examination revealed that all the plaintiff's joints the moved with full range of motion and without pain.  There was no evidence of joint swelling or warmth.  There was

6

no evidence of sensory, motor or reflex abnormalities. The plaintiff's grip strength and dexterity were normal.   Dr. Berdick's diagnoses was "[r]esolved musculoskeletal pain and insomnia".   Dr. Berdick did not refill the plaintiff's Percocet prescription as he did not find the plaintiff to be "[i]n much pain." [Tr. 280].

On February 19, 2003, the plaintiff was examined by Ephraim G. Aguilar, M.D., for her complaints of neck, left shoulder, cervical and right hip and leg pain.  Dr. Aguilar noted that the plaintiff was getting relief from her medicine and was able to function at work.  On March 13, 2003, after examining the plaintiff, Dr. Aguilar made the same observation. [Tr. 281-345].  Dr. Aguilar's notes for April, May, June and July, 2003  -  all reflect the same observation, that plaintiff is able to function at work.  Dr. Aguilar did note that the plaintiff has occasional problems sleeping.  It appears that Dr. Aguilar's opinion is pretty consistent with that of Dr. Berdick, his predecessor. [Tr. 28].

On June 9, 2005, the plaintiff was seen by Dr. Kenneth A. Visser,  Ph.D. (Clinical Psychologist) for a clinical evaluation. Dr. Visser observed that the plaintiff walked with a four-legged cane.  The plaintiff was "[c]ooperative, but angry."  The plaintiff stated that she was unable to remain seated because her right hip and lower back gave her pain all the time and that her left shoulder bothered her because of using the cane when she walks. [Tr. 248].   The plaintiff's medications were listed as: Zoloft, Percocet, Soma, Resteral, Naproxen, and Xanax. [Tr. 249].  The plaintiff has not married and has two children, ages 11 and eight years old.

The plaintiff was asked to participate in the Rorschach test.  The plaintiff invalidated the test by rejecting over half of the cards.  Dr. Visser stated that the plaintiff "[w]as able to listen to questions and respond usually on topic."  "[O]casionally she was critical of the question that was asked."  [Tr. 250].  The plaintiff was diagnosed with : "[A]djustment Disorder with Anxiety and Depression, major depression, moderate., Paranoid Personality Features, Physical complaints; severe hip and back problems; psychosocial stressors; limited support network and a Current GAF score of 60[5].  Her depression causes moderate social difficulties." [Tr. 251].  Dr. Visser's prognosis revealed that the plaintiff's emotional problems were not the cause of her having to stop work. [Tr. 252].

**B.     SPECIFIC ISSUES:**

> **(1)     THE COMMISSIONER ERRED IN FAILING TO EXPLAIN WHY THE EXAMINING PSYCHOLOGIST'S OPINION WAS NOT ADOPTED**

The plaintiff notes that the Commissioner (through the state disability agency) retained Dr. Zisser to assess the plaintiff's functional capacity and perform a medical consultative examination.  The plaintiff argues that the ALJ substituted his own opinion for all of Dr. Zisser's opinions and therefore, in violation of Eleventh Circuit case law

---

[5]     The Global Assessment of Functioning ("GAF") ranges from 100 to 1.  A score between 51 to 60 is defined as manifesting "moderate symptoms" (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (e.g. few friends, conflicts with peers or co-workers).

failed to state the weight given to Dr. Visser's opinion. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987; *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986). The ALJ reviewed the medical evidence concerning the plaintiff's psychological impairment and classified her mental health condition as mild in all areas. [Tr. 29]. The regulations provide for rating four areas of work related functions. 20 C.F.R. §§ 404.1520a(c)(3), 416.920. The first three areas: activities of daily living, social functioning, concentration, persistence and pace are rated on a scale of : none, slight, moderate, marked and extreme. The fourth area: episodes of decompensation, is rated as: none, one or two, three, or four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). When a claimant's degree of functional limitation is rated as "none" or mild" in the first, second, and third areas, and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe. 20 C.F.R. §§ 404.1520(a)(d)(1).

The Commissioner noted that the plaintiff admitted to the psychological examiner that she was capable of caring for her personal needs, going shopping and handling her own funds. [Tr. 27]. The plaintiff was also caring for her two children ages 11 and 8. [Tr. 29]. The record shows no episodes of decompensation by the plaintiff. Further, the plaintiff had not sought treatment from any mental health provider.

The ALJ considered the opinion of Dr. Visser, but rejected his opinion of plaintiff's limitations and functioning. [Tr. 27, 29].  The conclusions from a physician based on a one time examination are not entitled to the weight given to opinions from treating physicians.  *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986).  The weight afforded a physician's statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

Dr. Visser found that the plaintiff had an adjustment disorder with anxiety and major depression, with moderate GAF of 60. [Tr. 251].  A GAF assessment in the range of 51-60 shows only a moderate degree of social or occupational functioning.   The ALJ noted the plaintiff was prone to exaggeration and some of the information given to Dr. Visser by plaintiff was not accurate. [Tr. 27].  The plaintiff reported she had been fighting for social security benefits for five years, which was not the case.  [Tr. 27, 248].  The plaintiff alleged onset of disability as of March 2002, (the evaluation occurred in June of 2005). [Tr. 27].  The Plaintiff denied a history of abusing drugs and alcohol to Dr. Visser, but during the emergency screening on the date of the accident, the plaintiff tested positive for opiates. The plaintiff reported to Dr. Visser that she spends most of her day going to the doctors.  [Tr. 249].   The ALJ noted the plaintiff's medical records generally ended in 2002.  Lastly, the ALJ noted that the plaintiff admitted to Dr. Visser that her problems were physical not mental in nature. [Tr. 29, 248].  The ALJ properly rejected Dr. Visser's opinion and concluded that the plaintiff's psychological impairment did not limit her ability to work.  [Tr. 29].

10

(2)    **THE COMMISSIONER ERRED IN DISCREDITING THE OPINIONS OF DR. JOHN C. KAGAN AND DR. MARTHA POLLACK**

The plaintiff notes that Dr. Kagan, her treating orthopedist; and Dr. Mary Pollock, (the Commissioner's examining) internal medicine specialist agreed that the plaintiff would be significantly more limited than determined by the ALJ.  The plaintiff argues that the ALJ rejected both their opinions as deficient and superficial and that when evaluating any medical source opinion-treating or non-treating, the ALJ is required to consider the factors listed in the regulations[6].

The ALJ found the opinions of Dr. Kagan and Dr. Pollock to be unsupported by objective medical findings, based on unreliable information and inconsistent with the substantial evidence of record.    The ALJ may appropriately find good cause to reject a treating physician's opinion when the opinion is not bolstered by the evidence, where the evidence supports a contrary finding; or where the opinion is conclusory or inconsistent with the doctor's own medical records.  The ALJ considers the length of the treatment relationship, the nature and extent of the relationship, the supportability of the opinion with medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and the physician's specialization.  20 C.F.R. §§ 404.1527(d)(2-6), 416.l927(d)(2-6).

---

[6]    Social Security Ruling 96-8p (1996) requires the ALJ to explain his basis for rejecting any medical opinions conflicting with his RFC assessment  and Eleventh Circuit case law requires that the opinion of a treating physician be given "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir.).

Dr. Kagan treated the plaintiff for pain associated with her hip dislocation in 2002. [Tr. 24, 198-203].  The plaintiff returned to Dr. Kagan on two occasions in 2003 and once in 2004. [Tr. 266-68].  When the plaintiff presented to Dr. Kagan's office on June 24, 2005, she requested a disability slip, which Dr. Kagan signed stating the plaintiff was not able to work and permanently disabled. [Tr. 265].   On July 2005, Dr. Kagan opined the plaintiff could not sit/stand for more than one hour, needed to elevate both her legs and had to lie down for 4-6 hours in an 8-hour workday.  Dr. Kagan reiterated this opinion in 2004 and made statements that the plaintiff was unable to work due to her injuries in 2002. [Tr. 196, 201, 243-47].

The x-rays ordered by Dr. Kagan and other physicians showed that the plaintiff's hip was well-reduced with no bony abnormalities. [Tr. 266, 267, 346].  An MRI scan of plaintiff's right hip demonstrated a well-preserved joint space and no evidence of effusion, ischemic necrosis, fracture or stress injury.  The edema or strain associated with the plaintiff's injury had also resolved. [Tr. 197].  MRI's of the plaintiff's cervical spine, thoracic spine, lumbar spine, right knee and left shoulder failed to document any objective basis for the plaintiff's complaints of pain and functional limitations. [Tr. 202].  An MRI of the plaintiff shoulder showed mild bursitis but no rotator cuff tear and no pathology to substantiate any pain. [Tr. 214].

Dr. Kagan's notes reflect that the diagnosis of reflex sympathetic dystrophy (RSD) due to nerve injury was based on the plaintiff's subjective complaints and not objective medical evidence. [Tr. 28-29].  Dr. Kagan made this diagnosis in June of 2005, after completing the disability slip and after a long gap in plaintiff's treatment. [Tr. 28-

12

29].  No other physician of record diagnosed this condition and Dr. Kagan provided no

rationale or documentation in support of this diagnosis.  The ALJ appropriately rejected

Dr. Kagan's unsupported opinions.[Tr. 28].

The ALJ reviewed the opinion of Dr. Pollock who examined the plaintiff on June

20, 2005, at the request of the disability office. [Tr. 255-264].  Dr. Pollock opined that the

plaintiff was limited to less than sedentary work, required a walker and should never

engage in postural maneuvers. [Tr. 255-64].  Dr. Pollocks's notes reveal after her physical

examination of the plaintiff, that "[t]he plaintiff walks with a severe right sided limp and

avoids weight bearing on the right hip".    The notes also state: "She has diminished range

of motion in the right hip due to pain and resists an exam there."  It appears from the

record, that Dr. Pollock based her opinion on limited range of motion findings and the

plaintiff's use of a walker. [Tr. 255-64].

It must be noted that the plaintiff stated to Dr. Pollock that she had dislocated her

shoulder and suffered multiple rib fractures in the accident. [Tr. 255].  There is no

evidence to support the plaintiff's assertion of multiple fractured ribs. [Tr. 29].  The

plaintiff asserted that she was having vision problems which made it difficult to read and

write. [Tr. 255].  There is no record that the plaintiff complained of vision problems to

any other treating or non-treating physicians. [Tr. 29].  The plaintiff also asserted that she

needed help with almost all her activities of daily living, including her bathing and

dressing. [Tr. 255].  The record shows that the plaintiff reported to Dr. Visser that she

takes care of her personal needs on a daily basis, goes shopping and manages her own

money. [Tr. 29, 249].  The plaintiff is not credible in the information she provided to Dr.

13

Pollock. Thus, the ALJ appropriately questioned Dr. Pollock's opinion to credit the

plaintiff's assertion that she could not sit or stand for 10 minutes, walk for more than 5

minutes or ambulate without a walker. [Tr. 255]. It appears from the record that Dr.

Pollock accepted the plaintiff's complaints without question and without the necessary

objective clinical findings. . [Tr. 29].

(3)    THE COMMISSIONER MISCHARACTERIZED THE
OPINIONS OF THE STATE AGENCY PHYSICIANS

The plaintiff argues that the ALJ mischaracterized the opinions of the state agency

non examining physicians as providing that the plaintiff could perform light to medium

work during the relevant time period. Further, the plaintiff contends that the record does

not contain any medical evidence that the plaintiff could even work prior to March 2003,

regardless of the exertional level.

The medical evidence provided by the examining and non-examining physicians

does not support a conclusion that the plaintiff was not able to work. The plaintiff

experienced a hip dislocation in a motor vehicle accident. [159, 162]. By all medical

information provided, this condition was corrected through surgery.

Dr. Richards, the orthopedic specialist, found the plaintiff was healing "quite

well" with only minimal evidence of limitation. [Tr. 346]. X-rays confirmed Dr.

Richards' impression and demonstrated fully that the plaintiff's hip was well-reduced

with no bony abnormalities. [Tr. 346]. The MRI scan showed the plaintiff's right hip to

have a well-preserved joint space with no evidence of joint effusion, ischemic necrosis,

fracture or stress injury and that the edema and strain associated with the plaintiff's injury

14

had resolved. [Tr. 197, 202].  Dr. Berdick found plaintiff able to move all joints with full

range of motion without pain on November 8, 2002.  Given the foregoing medical

evidence, the ALJ appropriately found the plaintiff not disabled.

### (4)   VOCATIONAL EXPERT TESTIMONY, PAST RELEVANT WORK AND RFC OF SEDENTARY WORK

The ALJ compared the demands of the plaintiff's past work[7] with her RFC and

concluded that the plaintiff's limitations precluded her from returning to her prior work.

When the ALJ determined that the plaintiff could not return to her past relevant work, the

burden shifted to the Commissioner to show that there is other work existing in

substantial numbers in the national economy that the plaintiff could perform.

The ALJ posed a hypothetical question describing an individual with the

plaintiff's vocational factors, age, education and past work experience who could perform

sedentary work consistent with the plaintiff's credible limitations. [Tr. 389-90].  The VE

responded that an individual with the plaintiff's limitations could perform jobs such as

telephone solicitor and cashier. [Tr. 389-90].  The VE further testified that at least 40,000

such jobs existed in the State of Florida. [Tr. 389-90].  The expert testimony provided by

the VE provided substantial evidence that allowed the Commissioner to meet her burden

of proving other jobs exist that the plaintiff can perform, the ALJ properly found the

plaintiff not disabled.

---

[7]     Additionally, the plaintiff's tax records showed that the plaintiff was engaged in medium level work activity during 2002 and 2003, thus the ALJ's finding that the plaintiff could perform sedentary work was based on substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act.   The plaintiff is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 20th day of September, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
All Parties of Record
All Counsel of Record

16